

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

JAN I I 2010

CLERK, U.S. DISTRICT COURT
By _____
            Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LARRY HATLEY                §
                                §
         Petitioner,        §
                                  §
VS.                           §
                                  §       NO. 3-08-CV-0183-L
RICK THALER, Director       §
Texas Department of Criminal Justice,     §
Correctional Institutions Division       §
                                  §
         Respondent.       §

**FINDINGS AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Larry Hatley, a Texas prisoner, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

A jury convicted petitioner of capital murder by intentionally causing the death of Edi Cruz Garcia while in the course of committing or attempting to commit robbery. Because the state did not seek the death penalty, punishment was automatically assessed at life imprisonment. Petitioner appealed his conviction and sentence. The state appeals court affirmed in a published opinion. *Hatley v. State*, 206 S.W.3d 710 (Tex. App.--Texarkana 2006, no pet.). Petitioner also filed an application for state post-conviction relief. The application was denied without written order. *Ex parte Hatley*, WR-69,028-01 (Tex. Crim. App. Jan. 16, 2008). Petitioner then filed this action in federal district court.

II.

In six grounds for relief, petitioner contends that: (1) the trial court should not have allowed

the state to withdraw a binding plea agreement; (2) one of the jurors was biased in favor of the

prosecutor; (3) the jury was selected in a racially discriminatory manner; (4) the trial court admitted

prejudicial evidence regarding the victim's children; (5) his conviction was based on uncorroborated

accomplice witness testimony; and (6) he received ineffective assistance of counsel.[1]

A.

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"). *See* Pub.L. 104-132, 110 Stat. 1214 (1996). Where, as here,

a state court has already rejected the claims raised by petitioner, a federal court may grant habeas

relief only if the state court adjudication:

> (1)    resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 411-13, 120 S.Ct. 1495, 1522-24,

146 L.Ed.2d 389 (2000). A state court decision is contrary to clearly established federal law if "it

relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches

a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v.*

*Dretke*, 359 F.3d 708, 713 (5th Cir.), *cert. denied*, 124 S.Ct. 2812 (2004), *citing Williams*, 120 S.Ct.

---

[1] As part of his answer, respondent argues that petitioner's claims are barred by the AEDPA statute of limitations. (*See* Resp. Ans. at 7-15). The court need not decide this procedural issue as petitioner is not entitled to federal habeas relief in any event. *See Coker v. Thaler*, ___ F.Supp.2d ___, 2009 WL 3849647 at *2 (N.D. Tex. Nov. 16, 2009) ("Given that limitations is not jurisdictional, it follows that the Court is not required to address it prior to denying relief on the merits.").

at 1519-20. A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S.Ct. at 1523. To be unreasonable, the application of clearly established federal law must be more than merely incorrect. *Gardner v. Johnson*, 247 F.3d 551, 559 (5th Cir. 2001). The standard is one of "objective reasonableness." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 2220 (2001), *citing Williams*, 120 S.Ct. at 1521-22 (O'Connor, J., concurring). Factual determinations made by state courts are presumed to be correct and are unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

B.

Petitioner first complains that the trial court should not have set aside a plea agreement that would have allowed him to plead guilty to the lesser offense of aggravated robbery. In exchange for his plea to a reduced charge, petitioner agreed to "fully cooperate with the State of Texas" and to testify truthfully against his co-defendants. (*See* St. App. Tr. at 99-101). After the plea agreement was accepted by the court, the state insisted that petitioner take a polygraph test to confirm the veracity of his testimony. When petitioner refused, the state filed a motion to set aside the plea agreement on the ground that petitioner failed to cooperate. (*Id.* at 106-07). The motion was granted by the trial court. (*See* SF-VIII at 4). On direct appeal, the state court held:

> The plain language of the written agreement called for Hatley to fully cooperate with the State. Hatley testified he had refused to submit to the polygraph examination. Thus, Hatley broke the agreement. Because it would be impractical for the trial court to force Hatley to submit to the polygraph examination or otherwise "fully cooperate" with the State, the State's sole remedy in this case was to have the plea agreement withdrawn, which the trial court did.

*Hatley*, 206 S.W.3d at 719.  The Texas Court of Criminal Appeals also rejected this claim on state collateral review.  *Ex parte Hatley*, WR-69,028-01.

"[T]he construction of [a] plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law[.]"  *Ricketts v. Adamson*, 483 U.S. 1, 5 n.3, 107 S.Ct. 2680, 2683 n.3, 97 L.Ed.2d 1 (1987).  Here, the state court determined that petitioner breached his duty to "fully cooperate with the State of Texas" by refusing to take a polygraph test.  Petitioner fails to offer any argument, much less clear and convincing evidence, to show that this construction of the plea agreement is unreasonable.  Instead, he accuses the prosecutor of "setting up a scenario to pull out of the agreement" by asking for a lie detector test.  (*See* Hab. Pet. at 7).  This self-serving and unsubstantiated accusation does not provide a basis for federal habeas relief.

### C.

In two grounds, petitioner contends that:  (1) one of the jurors was biased in favor of the prosecutor; and (2) the jury was selected in a racially discriminatory manner in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).  Petitioner's bias claim is based on the unproven assumption that a veniremember, who admitted attending the same church as the prosecutor, served on the jury as foreman.  The association with the prosecutor was voluntarily disclosed by the veniremember during voir dire:

> VENIREPERSON:  I know you.
>
> PROSECUTOR:  You know me?
>
> VENIREPERSON:  You go to Grace Community Fellowship Church.
>
> PROSECUTOR:  That's right.  I do.  Is there anything about – but we don't know each other personally.

VENIREPERSON:  Not other than church.

PROSECUTOR:  Just – just that we go to the same church.  Is there anything about us attending the same church that would cause you to be swayed one way or the other already?

VENIREPERSON:  (Shakes head)

PROSECUTOR:  You can sit on the jury panel and make a decision based on the evidence and if you see – if you're chosen to sit on the jury panel and you decide the case – you decide I don't prove my case and you find him not guilty, are you going to have a problem next Sunday telling me, hey, you just didn't prove your case well enough. Would that cause you any sort of problem?

VENIREPERSON:  Not at all.

PROSECUTOR:  Okay.  Might cause me a problem but –

VENIREPERSON:  I would try to do it with grace.

(SF-X at 49-50).  Nothing in the record indicates whether this veniremember ultimately served on

the jury.  For that reason alone, petitioner is not entitled to post-conviction relief. *See Ross v. Estelle*,

694 F.2d 1008, 1011-12 & n.2 (5th Cir. 1983) (bald assertions on critical issue in habeas petition,

unsupported and unsubstantiated by the record, have no probative value).

Even if the veniremember served on the jury, there is no evidence of actual bias. *See Hatten*

*v. Quarterman*, 570 F.3d 595, 600 (5th Cir. 2009), *pet. for cert. filed*, Sept. 1, 2009 (No. 09-7012)

("Actual bias exists when the juror failed to answer a material question honestly on voir dire, and

a correct response would have provided a valid basis for a challenge for cause.").  At most, petitioner

suggests that there was an "implied bias" on the part of the juror because he attended the same

church as the prosecutor.  While a court may presume bias in certain circumstances, *see Solis v.*

*Cockrell*, 342 F.3d 392, 395-98 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 1149 (2004) (discussing

implied bias case law), the attenuated relationship between the prosecutor and the juror in this case

does not justify such a finding. *See, e.g. Montoya v. Scott*, 65 F.3d 405, 420 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 1417 (1996), *quoting Anderson v. State*, 633 S.W.2d 851, 853 (Tex. Crim. App. 1982) ("the mere fact that a juror knows, or is a neighbor, or an intimate acquaintance of, and on friendly relations with, one of the parties to a suit, is not sufficient basis for disqualification").

Nor is petitioner entitled to relief with respect to his *Batson* claim. A federal habeas court may not consider a *Batson* claim absent a timely objection to the prosecutor's use of peremptory challenges. *See Thomas v. Moore*, 866 F.2d 803, 804 (5th Cir.), *cert. denied*, 110 S.Ct. 124 (1989). Because defense counsel did not raise a *Batson* objection at trial, this claim is procedurally barred from federal habeas review. *Id.; see also Wilkerson v. Collins*, 950 F.2d 1054, 1063 (5th Cir. 1992), *cert. denied*, 113 S.Ct. 3035 (1993).

D.

The court also rejects petitioner's claim involving the admission of evidence regarding the victim's children. At trial, Ishmael Perez testified that the victim, Edi Cruz Garcia, routinely wired money on Fridays to his wife and two "young" children in Mexico. (SF-XII at 63-64). This testimony was relevant to show that Garcia had been paid the day of the robbery and had wired money to his family just before the shooting. (*Id.* at 62-69). Even if testimony about Garcia's two "young" children should have been excluded, it was not unduly prejudicial. *See Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007), *cert. denied*, 128 S.Ct. 1874 (2008), *quoting Payne v. Tennessee*, 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720 (1991) ("[T]he admission of evidence may violate the Due Process Clause of the Fourteenth Amendment if the evidence is 'so unduly prejudicial that it renders the trial fundamentally unfair.'"). Perez testified that he and two friends, including Garcia, were robbed by three African-American men in the parking lot of the Ponderosa Apartments. (SF-XII at 62-70). One of the men shot Garcia twice. (*Id.*). Cedric Lewis,

an accomplice who testified on behalf of the prosecution, said that petitioner proposed the scheme

to commit the robbery and provided the gun used in the shooting. (*Id.* at 103-16). Other witnesses

testified that petitioner matched the description of one of the suspects, was present during the

shooting, owned a black gun, was tracked by bloodhounds to a nearby veterinary clinic, and told his

mother that no one was "supposed to take out the gun." (*See* SF-XI at 50-52, 61, 72-73, 93, 110-13;

SF-XII at 36-37). Petitioner also admitted in a videotaped confession that he planned to ask Garcia

for money, that he intended to "snatch it and run" if Garcia refused, and that he conspired with his

accomplices to commit the robbery. (*See* SF-XI at 24 & St. Exh. 2). In view of the overwhelming

evidence of guilt, there is no basis for concluding that the testimony about Garcia's children played

a "crucial, critical, and highly significant role" in the jury's verdict. *See Little v. Johnson*, 162 F.3d

855, 862 (5th Cir. 1998), *cert. denied*, 119 S.Ct. 1768 (1999).

E.

Petitioner's claim involving the admission of uncorroborated accomplice witness testimony

is not cognizable on federal habeas review. "[T]he Constitution imposes no requirement that the

testimony of an accomplice-witness be corroborated by independent evidence." *Dismuke v.*

*Quarterman*, No. 3-08-CV-0303-P, 2009 WL 50029 at *2 (N.D. Tex. Jan. 6, 2009), *COA denied*,

No. 09-10095 (5th Cir. Jul. 28, 2009) (citing cases). Even if the prosecution failed to satisfy the

requirements of the Texas accomplice-witness rule,[2] that violation of state law would not entitle

petitioner to federal habeas relief. *Id.*; *see also Brown v. Collins*, 937 F.2d 175, 182 n.12 (5th Cir.

---

[2] Article 38.14 of the Texas Code of Criminal Procedure provides:

> A conviction cannot be had upon the testimony of an accomplice unless
> corroborated by other evidence tending to connect the defendant with the offense
> committed; and the corroboration is not sufficient if it merely shows the commission
> of the offense.

TEX. CRIM. PROC. ANN. art. 38.14 (Vernon 2005).

1991), *citing Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982) (only

federal constitutional claims are cognizable in section 2254 proceeding).

F.

Finally, petitioner contends that he received ineffective assistance of counsel because his

attorney:   (1) failed to investigate, interview, or subpoena two potential defense witnesses; (2)

conceded during closing argument that petitioner participated in the robbery and fled the crime

scene; and (3) did not object to or rebut the false hearsay testimony of a police officer regarding

incriminating statements allegedly made by petitioner to his mother.

1.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably

effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*,

446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980).   To prevail on an ineffective

assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner

must demonstrate that the performance of his attorney fell below an objective standard of

reasonableness. *Id.*, 104 S.Ct. at 2064. Second, the petitioner must prove that he was prejudiced by

his attorney's substandard performance. *Id.* at 2067. There is a strong presumption that counsel's

conduct falls within a wide range of reasonable professional assistance. *See Romero v. Lynaugh*, 884

F.2d 871, 876 (5th Cir. 1989), *cert. denied*, 110 S.Ct. 1311 (1990).  In order to obtain federal habeas

relief, a petitioner must affirmatively show how the actions of his attorney deprived him of a fair

trial. *See Czere v. Butler*, 833 F.2d 59, 63-64 (5th Cir. 1987).

2.

Petitioner criticizes his lawyer for failing to investigate, interview, and subpoena two witnesses who allegedly were present at the Ponderosa Apartments when the victim was robbed and shot. In support of this claim, petitioner relies on the purported statements of Leonard Harrison and Anthony Relford, who claim that petitioner was standing "off to the side" about 25 or 30 feet away and ran from the scene after Lauron Willis pulled out a gun but before Willis shot the victim. *See Ex parte Hatley*, WR-69,028-01, Tr. at 54-55. Although petitioner attached these statements to his state writ, neither statement is signed. As a result, there was no competent evidence presented to the state habeas court as to the substance of the missing testimony. Without such evidence, "the court cannot begin to analyze a claim of ineffective assistance of counsel." *McCray v. Quarterman*, No. 3-07-CV-0940-D, 2007 WL 2873440 at *2 (N.D. Tex. Oct. 2, 2007), *citing Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

3.

Petitioner also faults his lawyer for conceding that he participated in the robbery and ran from the scene. At issue are the following statements made by counsel during closing argument:

> I'm not trying to make you think I'm going to deny that he was there. And he is guilty, in my opinion, of robbery. I mean, I'm not going to try to say he wasn't. But he's not guilty of capital murder and I'm going to explain why.

> * * * *

> Cedric told you that [petitioner] tried to get [Lauron Willis] to give him the gun. He said, don't shoot these people, please. Don't shoot them. Give me the gun. [Willis] wasn't having anything to do with that. And so at that point what is [petitioner] going to do, stay there or leave? We tell our kids, if you get into a bad situation, you leave. That's what he did. He left.

> * * * *

> And basically to me what that says is that if you get in a situation and
> you realize that you've done wrong, you better do something to stop
> it. Okay? Remember what the testimony was. [Petitioner] says
> "don't shoot. Please give me the gun," to [Lauron] Willis. [Willis]
> says, I'm not going to listen. . . . What was [petitioner] supposed to
> do at that point? He ran. He followed the advice we give our
> children. He took off. He was in the trees when the fatal shot was
> fired. And so that's why I say he's not responsible because he tried to
> stop him from doing anything further. He abandoned the plot. He
> left. He never came back. He didn't help hide the gun. He was gone.
> . . . I can't tell you not to find him guilty of robbery. He's guilty of
> that. But, Ladies and Gentlemen, he's not guilty of capital murder.

(SF-XIII at 19, 20-21, 25-26). Under the deferential standard by which counsel's actions at trial are

judged, petitioner has not shown that the decision by his attorney to concede guilt to a lesser offense

fell outside the wide range of reasonable professional assistance. To the contrary, in view of the

quantum of evidence against petitioner, counsel's concession that petitioner participated in the

robbery and ran from the scene was sound trial strategy. *See, e.g. Haynes v. Cain*, 298 F.3d 375, 381

(5th Cir.), *cert. denied*, 123 S.Ct. 676 (2002) (recognizing that partial concession of guilt is "sound

trial strategy" unless counsel concedes the only factual issues in dispute); *Gordon v. Cockrell*, 55

Fed.Appx. 717, 2002 WL 31933286 at *1 (5th Cir. Dec. 27, 2002) (counsel not ineffective for

arguing that defendant should be found guilty only of attempted aggravated robbery instead of

aggravated robbery).

4.

Nor was counsel ineffective for failing to object to or rebut the "hearsay testimony" of

Commerce Police Officer Glen McCall. On direct examination, the prosecutor asked McCall a

series of questions about statements made by petitioner to his mother when she visited him at police

headquarters:

> Q.     [BY PROSECUTOR]: Okay. Could you overhear their
> conversation?

A.      [BY McCALL]:  Yes, I could.

Q.      And, again, you were in pretty close quarters.  Right?

A.      Yes, ma'am.

Q.      Did you hear any replies that Mr. Hatley made to his mother?

A.      Yes, I did.  She asked him multiple times, like I said, how he was involved.  She said she couldn't live with herself if her son was the shooter but she wanted him to be truthful and tell her what role he played in the offense.

Q.      And what did he say to her.

A.      He said--he made several comments.  He wouldn't give anybody's name.  At one point, *he said he wasn't supposed to take out the gun, referring to someone else that had been with him, not himself.*

Q.      I'm sorry.  He said--what was--said what?

A.      *He said he wasn't supposed to take out the gun was essentially what he said.*

Q.      That was Mr. Hatley's sentence?

A.      Yes.  And he was referring to a third party.  He wasn't referring to himself.

Q.      Did he ever say, "I didn't know there was a gun?"

A.      No, he didn't.

Q.      Did he make any other--

A.      Statements?

Q.      Yes.  Did you [sic] make any other statements specifically in regard to the gun that you recall?

A.      Yes.  *He also said, I saw the gun and then ran.  [Cedric Lewis] ran behind me.  I ran to the end of the apartments and I heard shots.  I do not remember how many.  I went to the vet clinic.  I didn't shoot anyone.*

(SF-XI at 92-93) (emphasis added).  Contrary to petitioner's argument, the statements made by him to his mother are not hearsay.  *See* TEX. R. EVID. 801(e)(2) (excluding from definition of hearsay admissions by a party-opponent).  And while the state habeas record contains an affidavit from petitioner's mother refuting much of McCall's testimony, that affidavit, like the statements of Leonard Harrison and Anthony Relford, is unsigned.  Without competent evidence establishing the substance of any missing rebuttal testimony, the court is unable to conclude that counsel was ineffective for failing to call petitioner's mother as a rebuttal witness.  *See McCray*, 2007 WL 2873440 at *2.

## RECOMMENDATION

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED:  January 11, 2010.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE